# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| STATE OF DELAWARE, | ) | |
| | ) | |
| v. | ) | ID No. 0906014160 |
| | ) | |
| SHAWN A. HEATH, | ) | |
| Defendant. | ) | |

Submitted: July 25, 2022
Decided: October 31, 2022
Corrected:  November 3, 2022

## ORDER

*Upon Defendant's Petition for a Modification of Sentence*
*Under 11 Del. C. § 4214(f) and Del. Super. Ct. Spec. R. 2017-1(d),*
**DENIED.**

This 31st day of October, 2022, upon consideration of the Defendant Shawn A. Heath's Petition for a Modification of Sentence Under 11 *Del. C.* § 4214(f) (D.I. 67), the Attorney General's response thereto (D.I. 70), the positions of the parties at the hearing of Mr. Heath's petition, and the record in this matter, it appears to the Court that:

## FACTUAL AND PROCEDURAL BACKGROUND

(1)    On November 23, 2009, Mr. Heath pleaded guilty to second-degree assault (as a lesser offense of attempted first-degree murder) and related robbery, weapons, and conspiracy counts.[1]  The parties agreed to

---

[1]  Plea Agreement and TIS Guilty Plea Form, *State v. Shawn A. Heath*, ID No. 0906014160 (Del. Super. Ct. Nov. 23, 2009) (D.I. 26).

immediate sentencing and the recommended cumulative sentence to be imposed.[2] Consistent with their agreement, the State filed a habitual criminal petition at the change-of-plea hearing.[3] That petition sought application of Mr. Heath's habitual criminal status *only* to the second-degree assault count.[4]

(2)    Mr. Heath was sentenced to the minimum required for that felony assault conviction: eight years of imprisonment under the four-strikes provision of the then-extant Habitual Criminal Act.[5]

---

[2]    *Id.*

[3]    *See* DEL. CODE ANN. tit. 11, § 4214(a) (2008) (providing that a person who had been thrice previously convicted of a felony and was thereafter convicted of another felony could be declared a habitual criminal; the Court could then, in its discretion, impose a sentence of up to life imprisonment for that or any subsequent felony).

[4]    D.I. 27.

[5]    Corr. Sentencing Order, *State v. Shawn A. Heath*, ID No. 0906014160 (Del. Super. Ct. Nov. 23, 2009) (D.I. 29). *See* Order Declaring Shawn A. Heath a Habitual Criminal Offender, *State v. Shawn A. Heath*, ID No. 0906014160 (Del. Super. Ct. Nov. 23, 2009) (D.I. 28) (applying habitual criminal status only to the second-degree assault count); *see also* DEL. CODE ANN. tit. 11, § 4214(a) (2008) (any person sentenced under then-existing § 4214(a) had to receive a minimum sentence of not less than the statutory maximum penalty otherwise provided for any fourth or subsequent Title 11 violent felony that formed the basis of the State's habitual criminal petition); *id.* at §§ 612, 4201(c) and 4205(b)(4) (2008) (second-degree assault was then a class D violent felony with a statutory maximum of eight years imprisonment).

He received an additional term of years for the other convictions. Corr. Sent. Order, at 1-3. That cumulation is comprised of the statutorily-required minimums for those other crimes. So, they cannot be reduced in any way under 11 *Del. C.* § 4214(f). The Court's rules allow the reviewing judge to examine the entire sentence imposed in those certain habitual criminal cases eligible for review under 11 *Del. C.* § 4214(f) and to exercise his or her discretion to modify the attendant non-habitual sentences only if modification might otherwise be permitted by law. *See* Del. Super. Ct. Spec. R. 2017-1(d)(4). The terms of any attendant non-habitual sentence still ***must*** comply with any statutes governing the applicable minimum mandatory sentences for those other crimes. *See State v. Sturgis*, 947 A.2d 1087, 1092 (Del. 2008) (Superior Court rules on sentence modification "provide[] no

(3)     The cumulative sentence here—with its one habitual criminal component—arose from an incident synopsized for the Court as follows:

> On May 6, 2009, the Defendant and a co-defendant lured [Mark Washington] to the boat ramp at Chipman's Pond. Once there, the Defendant and co-defendant robbed [Mr. Washington]. During the robbery, the Defendant and co-defendant shot the victim in the neck. [Mr. Washington] was transported to Nanticoke Memorial Hospital in Seaford, Delaware, where he was interviewed by police officers. The Defendant and co-defendant were identified by the woman who lured [Mr. Washington] to the boat ramp.[6]

(4)     Mr. Heath has now sought exercise of the Court's jurisdiction to modify his second-degree assault sentence under 11 *Del. C.* § 4214(f).[7] The State has responded[8] and the Court heard the parties on the motion.[9] The State verified that the required victim contact was made[10] and reported: "Mr. Washington is fearful of the Defendant and opposes reduction of sentence."[11]

---

authority for a reduction or suspension of the mandatory portion of a *substantive* statutory minimum sentence.") (emphasis in original)).

[6]     State's § 4214(f) Resp., at 2 (D.I. 70).

[7]     D.I. 67; Del. Super. Ct. Spec. R. 2017-1(d)(2), (3).

[8]     Del. Super. Ct. Spec. R. 2017-1(d)(7) (providing that the Attorney General shall file a written response to a petition for sentence modification).

[9]     D.I. 72. Del. Super. Ct. Spec. R. 2017-1(d)(7) (providing that a petition for modification of sentence may be considered without presentation, hearing, or argument unless otherwise ordered by the Court and that the Court should give the Attorney General and any victim an opportunity to be heard on the matter).

[10]     *See* DEL. CODE ANN. tit. 11, § 4214(f) (2022); Del. Super. Ct. Spec. R. 2017-1(d)(7).

[11]     State's § 4214(f) Resp., at ¶ 7.

(5)    As this Court has explained:

Section 4214(f) is, at bottom, a truly unique vehicle for those in a very small universe—*i.e.*, only those inmates that received *the* minimum sentence a judge was constrained to impose under the prior version of the Habitual Criminal Act—to have their habitual sentences reviewed and the Court decide if a form of wholly discretionary relief is appropriate. That relief being the application of the now-revised Habitual Criminal Act's sentencing provisions to an inmate who might actually be eligible for release on the date of § 4214(f) application had the newer (reduced) habitual sentencing structure been an option at his original sentencing.  That's it.[12]

(6)    No doubt, the threshold eligibility requirements for the filing of a § 4214(f) petition are exacting.[13]  But at this final stage in a § 4214(f) proceeding—just as with any other type of sentence reduction or modification application—the decision whether to grant any relief is left wholly to the discretion of the Court.[14]  Indeed, "[u]nder every iteration of Delaware's

---

[12]    *State v. Brown*, 2022 WL 14781911, at \*2 (Del. Super. Ct. Sept. 9, 2022) (cleaned up) (quoting *State v. Henry*, 2022 WL 4112850, at \*3 (Del. Super. Ct. Sept. 9, 2022)); *Tucker v. State*, 2020 WL 1887684, at \*1 (Del. Super. Ct. Apr. 14, 2020).

[13]    *Yelardy v. State*, 2022 WL 9632128, at \*2 (Del. Oct. 14, 2022) ("[T]o be eligible to petition for sentencing relief under § 4214(f), an inmate serving a sentence (or sentences) imposed under the pre-2016 Habitual Criminal Act must meet both a type-of-sentence ***and*** the time-served requirement.") (emphasis added) (citations and quotation marks omitted); *State v. Lewis*, 2018 WL 4151282, at \*1-2 (Del. Super. Ct. Aug. 28, 2018) (explaining the requirements that must be met before this Court will issue a certificate of eligibility to seek relief via 11 *Del. C.* § 4214(f)), *aff'd*, 2019 WL 2157519 (Del. May 16, 2019); *State v. Rowan*, 2022 WL 896260, at \*1 (Del. Super. Ct. Mar. 28, 2022) (and describing those threshold requirements as "exacting").

[14]    DEL. CODE ANN. tit. 11, § 4214(f) (2022) ("Nothing in this section, however, shall require the Court to grant such a petitioner a sentence modification pursuant to this

-4-

criminal rules [or statutes] governing motions to reduce sentences, such entreaties are addressed to the sound discretion of this Court."[15]

(7)    Section 4214(f) does include some factors the Court "reviews" when considering the final-stage § 4214(f) petition:  (a) "the applicant's prior criminal history, including arrests and convictions;" (b) "the applicant's conduct while incarcerated;" and, (3) "available evidence as to the likelihood that the applicant will reoffend if released, including a formal, recent risk assessment."[16]  It provides, too, that the Court "articulate . . . the results of its review and its rationale for granting or denying a petition."[17]

(8)    In the end though, the factors considered and the discretion this Court exercises in deciding whether to grant or deny relief on a § 4214(f)

---

section."); Del. Super. Ct. Spec. R. 2017-1(d)(9) ("The court may in its sole discretion grant or deny the petition for modification of sentence. . . . Nothing in this rule or in 11 *Del. C.* § 4214 shall require the court to grant sentence modification to a petitioner.").

[15]    *State v. Singleton*, 2020 WL 7074164, at *3 (Del. Super. Ct. Dec. 3, 2020). *See Hewett v. State*, 2014 WL 5020251, at *1 (Del. Oct. 7, 2014) (speaking on Criminal Rule 35(b): "When, as here, a motion for reduction of sentence is filed within ninety days of sentencing, the Superior Court has broad discretion to decide whether to alter its judgment."); *Shy v. State*, 246 A.2d 926, 927 (Del. 1968); *Lewis v. State*, 1997 WL 123585, at *1 (Del. Mar. 5, 1997).  *See, e.g.*, DEL. CODE ANN. tit. 11, § 4217(e) (2022) (providing that at the final stage of that sentence relief process "the court may in its discretion grant or deny the application for modification of sentence").

[16]    DEL. CODE ANN. tit. 11, § 4214(f) (2022).

[17]    *Id.*

petition are coextensive with the factors considered and the discretion this Court exercises when first imposing the now-contested sentence.[18]

## THE COURT'S REVIEW OF THE § 4214(f) FACTORS AND RATIONALE FOR DENIAL OF THIS § 4214(f) PETITION

(9)     *Prior Criminal History*—Before Mr. Heath's involvement in the shooting of Mark Washington, he had already—at age 28—been convicted of various felonies on no less than five separate and distinct occasions.[19] In addition, he—stemming from his 31 separate lifetime arrests—had a substantial adult misdemeanor conviction history and had amassed adjudications of delinquency for both felony and misdemeanor acts.[20]  As Mr. Heath now candidly admits:  "He was involved in the drug trade and committed violent acts in furtherance thereof."[21]

---

[18]  *See Rondon v. State*, 2008 WL 187964, at *1 (Del. Jan. 15, 2008) (by citing *Mayes v. State*, 604 A.2d 839 (Del. 1992) our Supreme Court makes it clear that the "sound discretion" this Court exercises in determining the merits of a timely Rule 35(b) motion is coextensive with the discretion this Court exercises when first imposing the subject sentence); *and see Tucker v. State*, 2020 WL 1887684, at *1 (Del. Super. Ct. Apr. 14, 2020) (noting that on § 4214(f) review, the Court "consider(s) the same elements the Court would be considering in any non-mandatory sentencing scheme"); *Lake v. State*, 1984 WL 997111, at *1 (Del. Oct. 29, 1984) (observing the "wide discretion" this Court has in making a sentencing determination includes "the latitude to consider all information pertaining to a defendant's personal history and behavior which is not confined exclusively to conduct for which that defendant was convicted" and "almost any factor including prior criminal charges, hearsay, and other information normally inadmissible for the purpose of determining guilt").

[19]  *See* Habitual Offender Motion, *State v. Shawn A. Heath*, ID No. 0906014160 (Del. Super. Ct. Nov. 23, 2009) (D.I. 27); State's § 4214(f) Resp., at A.

[20]  State's § 4214(f) Resp., at A.

[21]  Mr. Heath's § 4214(f) Pet., at ¶ 5.

-6-

(10)  *Conduct While Incarcerated*—Mr. Heath has provided the Court with a few certificates documenting his educational achievements during his present incarceration.[22]  The Court commends him for those efforts.  But the Court can hardly credit Mr. Heath's generous portrayal of himself as "a low-risk inmate, with minimal disciplinary issues."[23]

(11)  No, Mr. Heath's behavior while incarcerated has been far from exemplary.  It appears from the records provided that as of earlier this year he had earned 289 days of meritorious good time credits only to have 276 of those days deducted for poor performance.[24]  His Department of Correction records also list adjudications for twenty-four (24) Class 1 and Class 2 disciplinary violations—six of those violations occurred in the last two years.[25]

(12)  *Likelihood of Reoffending If Released*—Neither party provides or references any recent formal risk assessment.  In turn, the Court must be guided in part here by Mr. Heath's past behavior.  When not incarcerated, Mr. Heath has shown little to no amenability to community supervision as evidenced by his numerous probation violations.  And he likewise has shown

---

[22]  Mr. Heath's § 4214(f) Pet., at Ex. B.

[23]  *Id.*, at ¶ 5.

[24]  State's § 4214(f) Resp., at B.

[25]  *Id.*, at C.

little to no respect for the criminal courts' processes as evidenced by his capias history. In short, prior to this last sentencing, Mr. Heath had been before Delaware's criminal courts from age 13 on with little abatement.[26]

(13) Recall that Mr. Heath, when striking his plea deal with the State, agreed to the now-challenged term of the sentence imposed (*i.e.*, that he be declared an habitual criminal for just the second-degree assault count and serve only eight years of his cumulative term under the provisions of the then-extant Habitual Criminal Act for that crime). Mr. Heath, no doubt, reaped the benefit of that agreement—his sentencing exposure dropped from a minimum of multiple natural life terms (under the pre-2016 three-strikes habitual criminal provision) to the 20-year minimum imposed.

(14) Mr. Heath now asks the Court to undercut that bargain by cleaving the habitual term of his sentence in half. And he does so by resort to a statutory tool it is doubtful the General Assembly meant for this particular job.[27] While perhaps not controlling, these are salient factors for the Court to consider when it receives entreaties like this.[28]

(15) It is discomfiting that Mr. Heath now does that suggested by far

---

[26]   *Id.*, at Ex. A.

[27]   *See generally Brown*, 2022 WL 14781911, at *2; *Tucker*, 2020 WL 1887684, at *1.

[28]   *See, e.g., State v. Colburn,* 2015 WL 1881181, at *3 (Del. Super. Ct. Apr. 24, 2015).

too many who resolve their serious criminal cases by plea—invite the Court to assist in the violation of his plea agreement. As this Court observed earlier this year:

> When the parties arrive at an agreed-upon number either's request of a sentence other than that expressly bargained for in the plea agreement is, at bottom, a breach of that agreement. It matters not whether that breaching request is made during the sentencing hearing, immediately thereafter, or anytime later. And the Court should play no role in such chicanery merely because the memory and immediacy of a potential trial with all its burdens and trappings have faded.[29]

The eight-year habitual term for the felony assault was bargained-for and agreed-to by the parties. Resultingly, it was a term expressly accepted by the Court,[30] and became a component of the sentence integral to the Court's overall "sentencing scheme" or "plan" reflecting the parties' agreement and the seriousness of his offense.[31] So the Court could end its examination of Mr. Heath's petition right here—that is reason and rationale enough to deny his § 4214 petition.

---

[29] *State v. Felton*, 2011 WL 189327, at *2 (Del. Super. Ct. Jan. 20, 2022) (internal citations omitted).

[30] Transcript of Plea and Sentencing Hearing (D.I. 49), at 21 ("All right. I am going to sentence you to the deal which has been negotiated based upon all the circumstances and your prior record.").

[31] *Defoe v. State*, 750 A.2d 1200, 1202 (Del. 2000).

(16) But to be complete, the Court has considered Mr. Heath's prayer—*i.e.*, that the Court should now reevaluate his case and decide that just four years is appropriate for his felony-assault count—on the merits. When doing so, the Court has fully reviewed Mr. Heath's application, the State's response, the record of his case, Mr. Heath's prior criminal history, and all other sentencing and supervision information available. The Court finds that when all these case-specific factors are considered, they do not call for a sentence reduction here. Instead, after thorough review of the merits of Mr. Heath's request, the Court finds its original sentencing judgment is appropriate for the reasons stated at the time it was rendered.[32]

(17) **NOW, THEREFORE, IT IS ORDERED** that Mr. Heath's Petition for a Modification of Sentence Under 11 *Del. C.* § 4214(f) is **DENIED**; the sentence imposed for his assault second degree conviction (PS09-06-0688) will remain as originally imposed.

Paul R. Wallace, Judge

Original to Prothonotary

cc:   Christopher Hutchison, Esquire
      David Hume, IV, Chief Prosecutor, Sussex Co.

---

[32] *See Tucker*, 2020 WL 1887684, at *1 ("In cases where, after considering the same elements the Court would be considering [ ] [under the revised habitual criminal or] any non-mandatory sentencing scheme, the sentence is one the Court would have imposed anyway, then relief is not warranted.").